[Cite as *State v. Fellows*, 2010-Ohio-2699.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    09 JE 36 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| BRIAN FELLOWS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas Court, Case No. 09CR15.


JUDGMENT:     Convictions Affirmed; Sentence Vacated in part; Cause Remanded for Resentencing.


APPEARANCES:
For Plaintiff-Appellee:     Attorney Thomas Straus
Prosecuting Attorney
Attorney Jane Hanlin
Assistant Prosecuting Attorney
16001 State Route Seven
Steubenville, Ohio  43952

For Defendant-Appellant:     Attorney Dennis McNamara
88 East Broad Street, Suite 1350
Columbus, Ohio  43215


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  June 14, 2010

VUKOVICH, P.J.

¶{1}   Defendant-appellant Brian Fellows appeals from the judgment of the Jefferson County Common Pleas Court entered after a jury found him guilty of attempted murder, kidnapping, and felonious assault.  He raises three evidentiary issues concerning the admission and exclusion of certain testimony.  He also contests the jury instruction regarding attempted murder, claiming that the court failed to instruct on the elements of attempt.  Finally, he states that after the court merged the attempted murder and the felonious assault counts, the court was not permitted to impose a concurrent sentence on each.

¶{2}   For the following reasons, the jury verdict is upheld.  However, appellant's sentences for attempted murder and felonious assault are reversed and remanded for resentencing.  As appellant points out, when counts are merged, only one sentence can be entered thereon, and this remains true even if the sentences were run concurrently.

## STATEMENT OF THE CASE

¶{3}   On January 7, 2009, appellant was arrested for his behavior toward Lori Destefano, his former girlfriend.  He was indicted for the following offenses:  attempted murder, a first degree felony in violation of R.C. 2903.02(A) and R.C. 2923.02(A); kidnapping, a first degree felony in violation of R.C. 2905.01(A)(3); and felonious assault, a second degree felony in violation of R.C. 2903.11(A)(2).  His jury trial began on September 29, 2009.

¶{4}   Ms. Destefano testified that she ended her long-term relationship with appellant in 2008, when she moved into an apartment to which he did not have a key.  (Tr. 149-150).  She disclosed that on January 7, 2009, she returned from dropping her daughter off at school to find that appellant had entered her apartment without her permission.  (Tr. 156-157).  He demanded to speak with her and would not listen when she asked him to leave.  (Tr. 158, 161).  She testified that he then pulled out a gun and pointed it at her, adding that he did not point the gun at himself.  (Tr. 161, 163).

**¶{5}**   Ms. Destefano stated that appellant checked to make sure a door was locked and asked for her cellular telephone.  (Tr. 162-163).  She said that she tried to "talk him down."  (Tr. 161-162).  She testified that they began wrestling while he had a gun in his hand.  He then pushed her backwards over a bench causing her to fall to the floor.  She said that he kept saying that he was going "to end it all right now."  She begged him not to leave her child without a mother.  (Tr. 163).

**¶{6}**   Ms. Destefano disclosed that appellant held the gun so tight to her chest that it left a bruise.  (Tr. 170-172).  Photographs were admitted showing the injury.  At this point, she testified that he pulled the trigger but the gun merely clicked and did not fire.  (Tr. 164).  It was explained that the reason the gun did not fire was that the slide moved out of place due to it being pushed so hard against the victim, which engaged a safety device.  (Tr. 256-259, 288-290).

**¶{7}**   Ms. Destefano testified that when the gun did not fire, appellant said, "What the fuck."  He adjusted the gun parts and successfully fired into the floor right next to her.  He then asked, "What's going on?  What's happening to me?"  (Tr. 164).  He fled the scene but soon called to apologize.  (Tr. 169).  This conversation was recorded on her answering machine.

**¶{8}**   Appellant's former co-worker, who works in the justice center as a sergeant for the sheriff's office, testified that he loaned appellant his gun a few days prior to the incident.  (Tr. 130, 135).  Appellant testified that he borrowed the gun from his friend when he decided to take his own life.  (Tr. 323).  He said that he then purchased bullets for the gun.  A few days later, he went to Ms. Destefano's apartment to thank her for the help she had given him throughout their years together.  (Tr. 324).  He admitted that if she refused to talk to him, he planned to use the gun to scare her.  (Tr. 325, 345).

**¶{9}**   Appellant also admitted that he pushed the door shut when Ms. Destefano tried to open it to escape.  (Tr. 328, 350).  He conceded that he grabbed her and bent her backwards over a bench with one hand while the gun was in his other hand.  (Tr. 329, 352).  He claimed that the gun was nowhere near her body and that he did not point it at her. (Tr. 350-354).  He acknowledged that he pulled the trigger

twice in Ms. Destefano's presence: the first time the gun did not fire as he allegedly intended to shoot a table, and the second time the gun fired into the floor. (Tr. 329).

¶{10} After the gun discharged into the floor, he said that he tried to shoot himself two times while fleeing but the gun did not fire. (Tr. 330). He disposed of the gun along a road. He directed the police to the gun after his arrest. (Tr. 235). He claimed that his intent was only to kill himself. (Tr. 330-331, 357). The jury found appellant guilty as charged.

¶{11} The court sentenced appellant to eight years for attempted murder, eight years for kidnapping, and seven years for felonious assault. The court merged the attempted murder and felonious assault counts with the agreement of the state. The court then ran the attempted murder sentence concurrent with the felonious assault sentence and ran the kidnapping sentence consecutively for a total of sixteen years. Appellant filed a timely appeal from the October 2, 2009 sentencing entry.

## ASSIGNMENT OF ERROR NUMBER ONE

¶{12} Appellant sets forth four assignments of error, the first of which provides:

¶{13} "THE TRIAL COURT ERRED WHEN IT ADMITTED OVER OBJECTION THAT 1) THE VICTIM AND APPELLANT HAD A PRIOR ALTERCATION AND 2) APPELLANT CONSENTED TO HIS CHILD BEING ADOPTED."

¶{14} It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court and an evidentiary decision will not be reversed absent an abuse of discretion. *State v. Robb* (2000), 88 Ohio St.3d 59, 68; *State v. Lowe* (1994), 69 Ohio St.3d 527, 532 (specifically dealing with other acts evidence); *State v. Martin* (1985), 19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

¶{15} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). A statute similarly provides:

**¶{16}** "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.

**¶{17}** The standard for admitting other acts evidence is strict, and thus, there must be substantial proof that the other act occurred. *Lowe*, 69 Ohio St.3d at 529; *State v. Broom* (1988), 40 Ohio St.3d 277, 281-282. However, the standard for admitting evidence of other acts is not whether the evidence is necessary to prove an element of the offense. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶19. Rather, the issue is merely whether the evidence "tends to show" any of those matters enumerated in the rule or statute. Id.

**¶{18}** Appellant first contends that the arresting officer should not have been permitted to testify over objection that he responded to a disturbance at Ms. Destefano's apartment in August of 2008 and that he told appellant that he would be arrested for trespassing if he returned. (Tr. 237-239). Appellant states that none of the offenses involved trespassing and argues none of the other acts exceptions apply. As the officer's testimony constituted substantial proof that the "other act" occurred, the question here is whether the disputed testimony tended to show an enumerated exception.

**¶{19}** The main issue in this case was whether appellant had the requisite intent. He claimed that he went to the apartment with the intent to kill himself, not the intent to murder Ms. Destefano. It could be said that entering an apartment after police have threatened to arrest you for doing so tends to show intent to injure or restrain the occupant of that apartment.

**¶{20}** Moreover, as the state suggests, the fact that he had been informed by police that entering again would be trespassing shows absence of mistake as to whether he had permission to enter. Although not an element of his charges, the fact

that appellant entered without permission was relevant to establishing his intent. As stated above, the standard for admitting evidence of other acts is not whether the evidence is necessary to prove an element of the offense. *Crotts*, 104 Ohio St.3d 432 at ¶19.

¶{21} Furthermore, the Supreme Court has allowed, in a kidnapping trial, testimony that, soon before his kidnapping of another female who rejected him, the defendant threatened to hit his girlfriend after she had rejected him. *State v. Wilson* (1996), 74 Ohio St.3d 381, 390. The Court noted that the state argued in part that the defendant's motive for kidnapping the victim was his inability to deal with female rejection. Id. See, also, *State v. Charley*, 7th Dist. No. 05BE34, 2007-Ohio-1108, ¶44-45 (prior wife's testimony that she obtained restraining order tends to show motive of inability to accept female rejection in prosecution for murder of last girlfriend). Here, we have a similar admitted inability to deal with the victim's rejection, providing a motive for the kidnapping and for the presence of the weapon. As appellant admitted, he thought he would scare Ms. Destefano into talking to him. (Tr. 328).

¶{22} In addition, as the state points out, by the time the police officer testified, the jury had already heard about the summer disturbance from Ms. Destefano. The only objection entered during this portion of Ms. Destefano's testimony was that the witness appeared to be speculating that appellant knew that he could not come to the apartment. (Tr. 158-160).

¶{23} Prejudice is lacking where the objected to evidence was already heard. See, e.g., *State v. Fain* (Aug. 22, 1990), 9th Dist. No. 14578. Prejudice was also diminished by the fact that the jury heard that the summer incident involved no physical violence. (Tr. 312).

¶{24} An error may not be predicated on a ruling which admits or excludes evidence unless a substantial right is affected. Evid.R. 103(A)(1); Crim.R. 52(A) (harmless error). In arguing that the admission of this testimony was not harmless, appellant erroneously sets forth the harmless error test for *constitutional* violations. See *State v. Williams* (1983), 6 Ohio St.3d 281, 290.

¶{25} Evidentiary questions such as this involve non-constitutional claims. See, e.g., *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶88, 286 (other acts

evidence harmless where impact of such testimony was minimal and was not prejudicial given other compelling evidence of appellant's guilt); *State v. Skatzes*, 101 Ohio St.3d 196, 2004-Ohio-6391, ¶110. Non-constitutional error is harmless if there is substantial other evidence to support the guilty verdict. Id. See, also, *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶74; *State v. Keenan* (1998), 81 Ohio St.3d 133, 142; *State v. Webb* (1994), 70 Ohio St.3d 325, 335.

¶{26} Here, Ms. Destefano presented compelling testimony that appellant held her at gunpoint and otherwise restrained her against her will. Appellant essentially admitted the elements of kidnapping on the stand. (Tr. 350-354). He pressed the gun so hard against her chest that it left a bruise. (Tr. 163-164). Ms. Destefano stated that he pulled the trigger in order to shoot her in the chest. She heard the click when the gun failed to fire. (Tr. 164). She testified that he then swore, adjusted the gun, and successfully test-fired it into the floor.

¶{27} Appellant apologized to Ms. Destefano over the telephone soon after the incident. Contrary to his suggestion, the fact that they did not speak of the fact that he pulled the trigger against her chest in the conversation does not show that the attempt did not occur. Adding to the evidence against him is the fact that he disposed of the weapon by throwing it out of a car window, even though he had borrowed it from a friend. This disposal is more indicative of behavior in a case of attempted murder than in a case of firing a hole in a floor while trying to kill oneself.

¶{28} In conclusion, there was substantial evidence that it was Ms. Destefano he intended to kill when he pulled the trigger, even if he also intended to kill himself. As such, even assuming arguendo the court should have sustained the objection regarding the officer's testimony, any error would have been harmless.

¶{29} The second other acts issue raised here concerns the prosecutor eliciting from appellant on cross-examination that he consented to his son's adoption. (Tr. 362). He urges that this could only be an attempt to show his bad character.

¶{30} As the state responds, this question was asked only after appellant twice mentioned that he had a son on direct examination, even referring to child support. (Tr. 308, 324). Thus, the state urges that the trial court could have rationally found that he

opened the door to allow the state to show that he does not currently have a son because he agreed to his prior wife's request for him to consent to adoption.

¶{31} In fact, no objection was entered to the state's questions on whether he gave up his rights to his son. (Tr. 361). The objection was only entered after three questions on the topic had already been asked and answered. (Tr. 361-362). Thus, appellant waived any error. Evid.R. 103(A).

¶{32} In any event, even if this evidence should not have been admitted, there is no evidence of prejudice to his substantial rights. See Evid.R. 103(A); Crim.R. 52(A). Rather, as outlined above, there was substantial evidence to support the guilty verdict. See, e.g., *McKnight*, 107 Ohio St.3d 101 at ¶88; *Skatzes*, 101 Ohio St.3d 196 at ¶110; *Conway*, 109 Ohio St.3d 412 at ¶74; *Keenan*, 81 Ohio St.3d at 142; *Webb*, 70 Ohio St.3d at 335. Additionally, giving your ex-wife consent to have your son adopted (presumably by her new husband) is of minor significance compared to the gravity of the attempted murder charge. See *Conway*, 109 Ohio St.3d 412 at ¶74 (involvement in robbery is of minor significance compared to the gravity of an aggravated murder charge). In accordance, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

¶{33} Appellant's second assignment of error contends:

¶{34} "THE TRIAL COURT ERRED WHEN IT PRECLUDED THE SEARGENT [SIC] FROM TESTIFYING THAT APPELLANT WAS SUICIDAL."

¶{35} As aforestated, the admission or exclusion of evidence rests within the sound discretion of the trial court, and an evidentiary decision will not be reversed absent an abuse of discretion. *Robb*, 88 Ohio St.3d at 68. Moreover, even if the preclusion of evidence was an abuse of discretion, there must be evidence of prejudice to the defendant's substantial rights or the error is considered harmless. Evid.R. 103(A); Crim.R. 52(A).

¶{36} Here, appellant complains that the court improperly precluded a deputy sheriff at the jail (the friend who loaned appellant the gun) from testifying as to why appellant was kept in the booking area for sometime after his arrest. (Tr. 139). Defense counsel wished to elicit that appellant was on suicide watch. (Tr. 140). Since the defense theory was that appellant only had an intent to kill himself, rather than an

intent to kill Ms. Destefano, he states that the precluded evidence about a suicide watch was critical to support his claim that he was in fact suicidal.

¶{37} The state claims that appellant's mental state *after* being arrested for kidnapping and for trying to murder someone he loved is not strictly relevant to his intent before and during the commission of the offenses. That is, one may become suicidal due to the shame of their behavior or the fact of being apprehended and the contemplated future in prison.

¶{38} Furthermore, as the state points out, being suicidal does not negate an intent to kill your former girlfriend. See *State v. Boggess* (Sept. 20, 1989), 9th Dist. No. 89CA4501 (alleged intent to commit suicide was not a defense to the offenses and could be excluded, especially considering witness testimony regarding defendant's actions). Here, as set forth above, substantial evidence was presented that appellant tried to kill Ms. Destefano. Since being suicidal is not a defense to murder, it seems that the trial court did not abuse its discretion on this issue.

¶{39} Moreover, prejudice is not apparent. First, evidence of suicidal thoughts could just as likely lead a juror to conclude that a murder-suicide was planned. Second, the court here allowed a great deal of evidence that appellant was suicidal. It was only the friend's testimony of a suicide watch that was excluded.

¶{40} Notably, if a suicide watch is imposed as a result of the defendant's statements, then admitting an officer's testimony on this matter could be equated to a court improperly allowing the defendant to introduce his own statement in violation of Evid.R. 801(D)(2); only admissions of a party-opponent are admissible under this hearsay exception. In other words, the question could be seen as an attempt to get in self-serving evidence that was the result of a self-serving statement without being subject to cross-examination on the statement.

¶{41} Appellant did testify here, and he described his suicidal feelings and intent. He also described his depression and the fact that the jail nurse put him on an anti-depressant after his arrest. His uncle also testified that he was suicidal before and after the incident.

¶{42} In addition, there was substantial evidence to support the guilty verdicts. See, e.g., *McKnight*, 107 Ohio St.3d 101 at ¶88; *Skatzes*, 101 Ohio St.3d 196 at ¶110;

*Conway*, 109 Ohio St.3d 412 at ¶74; *Keenan*, 81 Ohio St.3d at 142. Thus, even if the evidence could have been admitted, it does not appear that its exclusion was so prejudicial that appellant's substantial rights were affected. See Evid.R. 103(A); Crim.R. 52(A). As such, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

¶{43} Appellant's third assignment of error alleges:

¶{44} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT DID NOT CHARGE THE JURY AS TO THE ELEMENT OF ATTEMPT."

¶{45} This argument deals only with the attempted murder charge. Appellant believes that the court failed to charge the jury on attempt and thus erred by failing to instruct on all of the essential elements of the offense of attempted murder. As appellant failed to object at trial, this argument is subject only to a plain error analysis. (Tr. 377, 429). See, e.g., *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶275-276; Crim.R. 30(A).

¶{46} Murder is defined as purposely causing the death of another. R.C. 2903.02(A). Attempt is statutorily defined as purposely or knowingly, when purpose or knowledge is sufficient culpability for the commission of an offense, engaging in conduct that, if successful, would constitute or result in the offense. R.C. 2923.02(A).

¶{47} As appellant acknowledges, the court properly instructed on the elements of murder. (Apt. Brief at 17, stating, "The trial court charged the jury as to offense of murder, as opposed to attempted murder."); (Tr. 411-413). As the state points out, the court had already instructed:

¶{48} "Count one. Attempted murder. The defendant is charged with attempted murder. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about January 7, 2009 at Jefferson County, Ohio, that the defendant, Brian W. Fellows, did purposefully engage in conduct that, if successful, would constitute the offense of murder." (Tr. 411).

¶{49} The court's language mirrors the relevant portions of the statute defining attempt. See R.C. 2923.02(A). Appellant does not pinpoint exactly what he contends is missing from the instruction.

¶{50} If appellant believes the court should have used the phrase, "when purpose * * * is sufficient culpability for the commission of an offense," this would have been superfluous and confusing where the court is already defining murder as requiring purpose. Moreover, there was no need to say "or knowingly" because knowingly is not the mental state for murder. See R.C. 2923.02, Staff Note (1973) ("If the offense attempted specifies that purpose is the culpable mental state required for its commission, then the attempt must be purposeful.").

¶{51} Although he does not do so, appellant may have meant to argue that the trial court should have added the model instruction proposed in 4 OJI 523.02: "A criminal attempt is when one purposely does or omits to do anything which is an act or an omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." This further instruction would have been accurate and acceptable. See *State v. Woods* (1976), 48 Ohio St.2d 127, 131. However, it was not required. See, e.g., *State v. Valentine*, 5th Dist. No. 08CA24, 2009-Ohio-4738, ¶41-48 (where court read statutory definition, it fully instructed on elements of attempt); *State v. Martin* (Dec. 6, 1996), 2d Dist. No. 151615 (statutory definition was sufficient).

¶{52} Trial counsel did not ask for such instruction, and the failure to do so could very likely have been trial strategy. This is because the main issue revolved around whether appellant pulled the trigger against Ms. Destefano's chest; a jury could easily find that appellant purposely pulled the trigger of a loaded gun against her chest and that if the firing was successful, then Ms. Destefano's death would have resulted. Defense counsel may have worried that with the substantial step instruction, the jury would have even more reason to find the elements of attempted murder satisfied because he took many other steps. For instance, he borrowed a gun from a friend, bought bullets, entered the apartment without permission, waited for Ms. Destefano, and forcefully restrained her all while holding a gun in one hand, and he fired a bullet into the floor next to her as she was on the ground.

¶{53} In conclusion, appellant's argument is unclear and is wholly without merit in any case. We presume trial tactics on matters such as jury instructions are within the wide range of competent assistance. *State v. Clayton* (1980), 62 Ohio St.2d 45, 47-49. See, also, *State v. Carter* (1995), 72 Ohio St.3d 545, 558. This is one of the

reasons why Crim.R. 30(A) requires counsel make a specific objection to jury instructions before the jury retires to deliberate in order to preserve the error for appeal. The outcome of the trial would not clearly have been otherwise had a different attempt instruction been sought and then given. See *State v. Underwood* (1983), 3 Ohio St.3d 12. Neither plain error nor deficient performance is apparent. This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER FOUR

**¶{54}** Appellant's fourth and final assignment of error states:

**¶{55}** "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT SENTENCED APPELLANT ON BOTH THE OFFENSES OF FELONIOUS ASSAULT AND ATTEMPTED MURDER."

**¶{56}** After trial, the court merged the attempted murder count and the felonious assault count with the state's consent. (Tr. 442, 444, 448). However, the court then sentenced on both offenses and ran the sentences concurrently. As the parties agree, this is impermissible. (There is no dispute about the consecutive sentence for the kidnapping charge, which was not merged.)

**¶{57}** Where two counts are merged, only one conviction can be entered. R.C. 2941.25. Thus, only one sentence can be entered. Running the two sentences concurrently does not solve this problem because two sentences and thus convictions end up being entered in the record. See *State v. Rance* (1999), 85 Ohio St.3d 632, 636 (a conviction in this context requires both a finding of guilt and a punishment).

**¶{58}** The state urges that resentencing is not required as correction of the procedural error can be accomplished on appeal. See *State v. Jones* (2000), 90 Ohio St.3d 403, 419, 423 (merging two death sentences). However, the Supreme Court has recently addressed the proper procedure for courts of appeal to follow after finding reversible error with regard to sentences imposed for allied offenses of similar import. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶1, 11, 14. The Court held that where the appellate court finds merger is required, it must remand for new sentencing hearing at which the state must elect which allied offense it will pursue against the defendant. See id. at ¶25. Although the case before us is factually different since merger was done here at the trial court level, that distinction does not detract from the

basic rationale in *Whitfield*. Namely, that it is the basic function of the prosecutor, not a court of appeals, to make the determination which merged offense it will pursue for sentencing purposes. Thus, we must reverse appellant's concurrent sentences for the merged offenses of attempted murder and felonious assault and remand for a new sentencing hearing where the state shall elect which merged offense it will pursue for purposes of sentencing. See id.

¶{59} For the foregoing reasons, appellant's convictions are affirmed. However, we reverse appellant's concurrent sentences and remand the case to the trial court for a new sentencing hearing.

Waite, J., concurs.
DeGenaro, J., concurs.