[Cite as *State v. Wright*, 2011-Ohio-5761.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    11 HA 2 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS. - | ) | O P I N I O N |
| | ) | |
| CURTIS WRIGHT, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Common Pleas
Court, Case No. CRI-2010-14.

JUDGMENT:    Affirmed.


APPEARANCES:
For Plaintiff-Appellee:    Attorney T. Shawn Hervey
Prosecuting Attorney
111 West Warren Street
P.O. Box 248
Cadiz, Ohio  43907


For Defendant-Appellant:    Attorney Timothy Young
Ohio Public Defender
Attorney E. Kelly Mihocik
Assistant Ohio Public Defender
250 East Broad Street, Suite 1400
P.O. Box 272
Columbus, Ohio  43215


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  November 4, 2011

VUKOVICH, J.

¶{1} Defendant-appellant Curtis Wright appeals from his burglary conviction entered in the Harrison County Common Pleas Court. Appellant argues that the trial court should have granted him a new trial based upon the post-trial confession of a defense witness. However, it was within the trial court's province to disbelieve this witness's post-trial version of events.

¶{2} Appellant then raises evidentiary issues such as the refusal to allow him to ask about police reports which he and a defense witness caused to be filed and the alleged admission of hearsay and other acts testimony. These decisions were within the trial court's sound discretion.

¶{3} Finally, he alleges that the verdict was against the manifest weight of the evidence. However, the jury did not clearly lose its way in evaluating the evidence. For the following reasons, the judgment of the trial court is affirmed.

### STATEMENT OF THE CASE

¶{4} Appellant was indicted for burglarizing a neighbor's house while they were on vacation. At a jury trial, nineteen-year-old Shawn Ellenbaugh testified that appellant was his mother's live-in boyfriend. He stated that on the night of the burglary, he and appellant walked to the neighbor's house because appellant wished to break in. (Tr. 216). He testified that appellant threatened to kill him if he told anyone. (Tr. 217). When they arrived, appellant tried to pry open the window but then used a rock to break the window. Shawn stated that he climbed through the window and unlocked the door for appellant. (Tr. 217-218). He testified that they went through the house stealing jewelry and money. (Tr. 221).

¶{5} According to Shawn, they then walked to his uncle's house where appellant borrowed a car. He said they drove to Steubenville where appellant bought crack with the stolen money and was told that the jewelry was fake. (Tr. 225). They went back to the burglarized house and stole a big screen television. When it would not fit in the trunk, they put it in the front seat, and drove back to Steubenville to sell it. Shawn testified that no one wanted an old model television, so they left it at a car wash. (Tr. 228). He stated that they arrived home just before 7:00 a.m. (Tr. 229).

¶{6} A cousin testified that she arrived at the house where Shawn and appellant lived at 6:30 a.m. after a night-shift at work. She stated that she saw the car pull in the drive with appellant in the driver's seat and Shawn in the passenger seat. (Tr. 254-256).

¶{7} The owner of the vehicle testified that appellant arrived at his house at midnight on January 17, 2010 and borrowed his car. (Tr. 165). The next morning he went to the house where appellant lived to retrieve his car and noticed the trunk latch was broken and the dashboard was scratched. (Tr. 169-170). In the vehicle, he found a screwdriver, a broken necklace, and a gift card holder addressed to the person whose house had been burglarized. (Tr. 171, 173). His girlfriend confirmed that it was appellant who borrowed their vehicle. (Tr. 188).

¶{8} Appellant's girlfriend, who is Shawn's mother, testified that appellant arrived home at 11:00 p.m. (Tr. 337). She claimed that she went with appellant to her brother's house to borrow his car, they went to Wintersville, and they returned home at 1:00 a.m. at which point they went to bed. (Tr. 339). She testified that appellant never left the bed that night. (Tr. 341).

¶{9} Her fourteen-year-old son, Brandon Ellenbaugh, testified for the defense that his mother and appellant went to his uncle's to borrow a car and arrived home at midnight or 1:00 a.m. (Tr. 373). Brandon said that his brother Shawn then asked him if he wanted to take a ride in their uncle's car but he refused to accompany Shawn. He testified that he saw Shawn return with the vehicle in the morning. According to Brandon, the next day, Shawn brought him to the house he had burglarized the night before, but Shawn noticed that someone had cleaned up the glass so they left. (Tr. 376).

¶{10} On September 30, 2010, the jury found appellant guilty of third-degree felony burglary in violation of R.C. 2911.12(A)(3). On October 28, 2010, appellant filed a motion for a new trial based upon newly discovered evidence. Brandon Ellenbaugh had delivered a written statement to the police station on October 26, 2010, claiming that it was he and Shawn who burglarized the house in the early morning hours of January 17, 2010.

¶{11} At a hearing, Brandon testified that they pushed their uncle's car out of their drive and drove to the neighbor's house. He described how they went through the house and what they stole. He said that Shawn went into an apartment in Cadiz for thirty minutes and reported that no one wanted to buy the television and the jewelry was fake. He stated that they left the television at a car wash in Cadiz. (Tr. 19).

¶{12} The detective who took Brandon's statement testified that Brandon told him that he missed appellant at their house and that he wanted to get him released. Brandon disclosed his belief that he would not be incarcerated because he was a juvenile. (Tr. 8-9). The detective believed that the child had been coached or that he fabricated the story to assist appellant. (Tr. 9).

¶{13} On December 28, 2010, the court denied the motion for a new trial. The court opined that Brandon's new story was not credible. The court noted that both of Brandon's stories lacked detail. The court pointed out that the jury did not place much weight on Brandon's original testimony when he testified for the defense and that this new story was also not credible. Appellant was then sentenced to five years in prison, and he filed a timely notice of appeal.

ASSIGNMENT OF ERROR NUMBER ONE

¶{14} Appellant's first assignment of error provides:

¶{15} "A TRIAL COURT MUST GRANT A DEFENDANT'S MOTION FOR A NEW TRIAL WHEN A WITNESS RECANTS HIS TESTIMONY AND THAT WITNESS CONFESSES THAT HE COMMITTED THE CRIME."

¶{16} Pursuant to Crim.R. 33(A)(6), a new trial may be granted on motion of a defendant whose substantial rights are materially affected by newly discovered evidence material to the defense which could not with reasonable diligence have been discovered and produced at the trial. A new trial cannot be granted on these grounds unless the following factors are met: (1) the evidence discloses a strong probability that it will change the result; (2) the evidence has been discovered since trial; (3) the evidence could not in the exercise of due diligence have been discovered before trial; (4) the evidence is material to the issues; (5) the evidence is not merely cumulative to former evidence; and (6) the evidence does not merely impeach or contradict former evidence. *State v. Petro* (1947), 148 Ohio St. 505, syllabus.

¶{17} The decision to grant or deny a new trial based upon newly discovered evidence falls within the trial court's sound discretion. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶85. Said decision should not be reversed absent a gross abuse of that discretion. *Petro*, 148 Ohio St. at 507-508.

¶{18} Merely because an important witness recants does not per se entitle a defendant to a new trial. *State v. Perdue*, 7th Dist. No. 04MA119, 2005-Ohio-2703, ¶16; *State v. Willard* (Jan. 10, 1991), 7th Dist. Nos. 88C57, 89C59. See, also, *State v. Walker* (1995), 101 Ohio App.3d 433, 435 (8th Dist.); *State v. Pirman* (1994), 94 Ohio App.3d 203, 209 (11th Dist.); *State v. Tijuerina* (1994), 99 Ohio App.3d 7, 12 (3d Dist.). Rather, where a witness recants and/or offers a post-trial confession, the trial court must determine which of the contradicting testimonies of that witness are credible. Id. See, also, *State v. Pasco* (Sept. 10, 1987), 7th Dist. Nos. 82C40, 83C28 (trial court has discretion to determine whether later confession of another person is credible). It is only if the trial court determines that the recantation is believable, must the court then consider whether the confession would materially affect the outcome of trial. *Perdue*, 7th Dist. No. 04MA119 at ¶18, 27; *Willard*, 7th Dist. Nos. 88C57, 88C59.

¶{19} Some relevant considerations in weighing the competing versions of testimony are: whether the judge reviewing the new trial motion also presided over the trial; whether the witness is a relative of the defendant or otherwise interested in his success; and whether the new testimony contradicts evidence proffered by the defense at trial. *State v. Shakoor*, 7th Dist. No. 10MA64, 2010-Ohio-6386, ¶27. According to the Ohio Supreme Court:

¶{20} "The trial judge is in a peculiarly advantageous position, under the prevailing circumstances, to pass upon the showing made for a new trial. He has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives that prompted the recantation. He is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and his opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial

court." *Taylor v. Ross* (1948), 150 Ohio St. 448, 452, quoting *State v. Wynn*, 178 Wash. 287, 34 P.2d 900, 901.

¶{21} Here, the child told the detective that he missed appellant. Appellant was his mother's live-in boyfriend. Other testimony established that appellant was his mother's cousin and thus a relative of the child. As such, the child has an interest in appellant's success. See *Shakoor*, 7th Dist. No. 10MA64 at ¶27. In fact, he told the detective his theory that a juvenile such as himself would not be incarcerated for the offense like appellant would. The detective did not believe that the child was present at the burglary with Shawn.

¶{22} Upon questioning at the new trial hearing, there were many details about the house and the location of items that the child did not know. He brought a hand drawn map with him in an attempt to prove that he knew the house's layout; however, he could have been coached on the map drawing as he did not draw it at trial. Even so, the stairs were not located in the correct place on the child's map. (Tr. 50). Moreover, the child did not describe how there was an attempt to pry open the window. (Tr. 16). However, testimony by those who discovered the burglary establishes that there were fresh pry marks at the scene which corresponded with Shawn's testimony that appellant tried to pry open the window. Moreover, a screwdriver was found in the borrowed vehicle which could have been used in an attempt to pry open the window.

¶{23} The trial judge determined that the fourteen-year-old child's confession was not credible. The court noted that the child's attempted alibi for appellant at the first trial was not found to be credible either, where he stated that Shawn left in the vehicle after his mother and appellant brought it home and that only Shawn returned in the car the next morning. The same judge presided over the trial and the new trial hearing and heard the child testify both times. See *Shakoor*, 7th Dist. No. 10MA64 at ¶27. The child testified for the defense at the trial, and thus, his new story conflicted with prior defense evidence. See id.

¶{24} The trial court was in the best position to determine whether the child's confession was credible. The court heard him testify twice and was able to view his demeanor, voice inflection, eye movements, and gestures. The court did not commit a

gross abuse of discretion in determining that the child first attempted to provide appellant with a defense by implicating only Shawn and then, when that did not work, attempted to provide appellant with a better defense by filing a false confession, knowing that a child under his brother's influence would be treated more leniently than an adult with a lengthy criminal record. As such, the trial court properly denied the motion for a new trial, and this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

¶{25} Appellant's second assignment of error alleges:

¶{26} "MR. WRIGHT'S CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AGAINST HIM WERE VIOLATED WHEN THE TRIAL COURT PROHIBITED HIM FROM CROSS-EXAMINING PENNY WILSON AND BRITTANI RILEY ON MATTERS THAT WOULD HAVE IMPACTED THEIR CREDIBILITY AND EXPOSED BIAS, PREJUDICE, AND ULTERIOR MOTIVES AND SUPPORTED HIS DEFENSE."

¶{27} On the second morning of trial, a bench conference was held where the court stated that it had a copy of a police report filed the evening before alleging that Bridget Ellenbaugh (appellant's girlfriend's daughter) received threatening comments from her aunt (Penny Wilson) and her cousin (Brittani Riley), two witnesses who would be testifying for the state. (Tr. 204). The report was retained as a court exhibit for purposes of appeal. According to the exhibit, appellant called the police to report that Bridget told him that Penny and Brittani were threatening her about her testimony to be presented the next day. The police obtained a statement from Bridget, who reported that her aunt and cousin asked her if appellant was threatening her and asked her to sign a paper stating the appellant was threatening her. At one point, while Penny was in the car, Brittani told Bridget that her kids could be taken away from her if she did not recant her statement, at which point Penny instructed Brittani to get in the car. Brittani then asked Bridget if she could call her later.

¶{28} The state asked that the trial court prohibit the defense from raising these allegations during the witnesses' testimony, stating that the claim had not yet been investigated and the witnesses could end up pleading the Fifth Amendment. (Tr.

205). The defense argued that the allegations were relevant to the veracity of Penny and Britanni. (Tr. 205-206).

¶{29} The court ruled that the probative value of the allegations was outweighed by the prejudicial effect since no investigation had yet taken place, noting that a trial could be interrupted merely by a defendant filing a report during trial. (Tr. 207). The court later examined Bridget to ensure that she had not been threatened into testifying and that she would testify truthfully. (Tr. 207, 386). Bridget then testified that her cousin, Brittani, did not sleep over on the night of the burglary. (Tr. 392).

¶{30} Brittani Riley, however, testified that, because she had to work until 6:00 a.m. that Saturday morning and had to return to work at 2:00 p.m., she slept over at the house where appellant lived because it was closer to work than her own home. (Tr. 254). She arrived at 6:30 a.m. and about twenty minutes later, she saw a vehicle pull in with appellant in the driver's seat and Shawn Ellenbaugh in the passenger seat. (Tr. 256). She noticed that the trunk was open and that they could not shut it. (Tr. 256-257).

¶{31} Brittani then testified that later that evening, she asked Shawn why they came in so late. He told her that appellant would kill him if he told anyone but eventually started crying and told her about the burglary. (Tr. 263). (Testimony such as this and the court's cautionary instructions thereon are issues addressed in the next assignment of error.) She told her mother, Penny Wilson, in hopes that her mother could help because she was formerly a police officer. Her mother testified that when she spoke with Shawn, he was crying and shaking. She asked him to do the right thing, and he agreed to confess to the police. (Tr. 285).

¶{32} Appellant argues that by refusing to allow questioning of these two witnesses about the allegation that they tried to intimidate Bridget Ellenbaugh into changing her testimony,[1] he was denied the right to meaningful cross-examination. He urges that if the jury heard about the police report, it would not only have damaged the credibility of these two witnesses but it also would have reinforced that they were biased against him.

---

[1]Appellant does not argue that Bridget's testimony was actually influenced; rather, the argument is focused on the character of Penny and Brittani.

**¶{33}** Initially, we note that an appellate court need not determine the propriety of an order granting or denying a motion in limine, which is merely a preliminary ruling, unless the claimed error is preserved by an objection, proffer, or ruling on the record at the proper point during the trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 259-260 (the failure to preserve a preliminary ruling constitutes waiver). Although the matter was discussed and ruled upon on the record mid-trial, this was specifically presented as and labeled in limine ruling on the state's request to exclude evidence. (Tr. 207). After the in limine bench conference, Shawn testified about the details of the burglary he helped commit. Then, Brittani and Penny testified. Nowhere during the testimony of Penny or Britanni was the in limine ruling sought to be changed into a final ruling.

**¶{34}** One of rationales behind the rule is that the court should make its final ruling in context. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶59 (objecting party must challenge evidence during trial when issue is presented in full context); *State v. Grubb* (1986), 28 Ohio St.3d 199, 201-202 (it is the potential treatment of an issue to be later resolved when it arises in the context of the trial where the trial court may change its mind based upon circumstances that are developed). Here, this would refer to the direct testimony of these witnesses being presented in order to determine the whole context of the contested items said to have bearing on their credibility. See *State v. Menton*, 7th Dist. No. 07MA70, 2009-Ohio-4604, ¶58 (raised before nurse's testimony but not during).

**¶{35}** In any event, the court's ruling was not erroneous. Appellant does not cite Evidentiary Rules here. However, he argues the evidence could have shown bias and could have exposed that the witnesses were not credible. Evid.R. 403, 608 and 616 appear most relevant.

**¶{36}** Evid.R. 608(B) provides that specific instances of the conduct of a witness, for the purposes of attacking the witness' character for truthfulness may in the discretion of the court, if clearly probative of untruthfulness, be inquired into on cross-examination of the witness concerning the witness's character for untruthfulness. Pursuant to Evid.R. 616(A), "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

¶{37} Appellant states that the allegations would have helped establish his belief that the family was biased against him because they wanted him out of Pam Wilson's life. However, he did not ask either Penny or Bridget about this theory of his. Defense counsel did begin asking Penny whether she disliked appellant but then discontinued this line of questioning without attempting to elicit evidence on his theory. (Tr. 288). He could have questioned them on this topic but did not.

¶{38} We also note that appellant's brief does not provide specifics or explain how exactly credibility or bias would be established. The only reason we know about the contents of the report was from ordering the exhibit from the trial court, not from the contents of appellant's brief, which only mentioned a general allegation of threatening by Penny and Brittani.

¶{39} Notably, nothing in the report influences Penny's character for truthfulness. In fact, it states that Penny was concerned that Bridget was being untruthful and expressed worry that appellant was coercing her niece's testimony. And, Penny was in the car when Brittani allegedly made the unfortunate statement about the possibility that Bridget's children could be taken away.

¶{40} Although appellant views the statement allegedly made by Bridget as threatening, it could be construed as a concerned cousin expressing what could happen for perjuring oneself in order to remain under a roof with a burglar who is dating your mother even though they are said to be first cousins. This does not establish a specific instance of untruthfulness or significantly affect her credibility. Rather, it is a family member taking one person's side over another's and an admonition to tell the truth.

¶{41} Evidence Rule 403(A) requires the court to exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *A criminal defendant's right to confront and cross-examine a witness is not unlimited, and the trial court retains wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination due to concerns regarding issues such as harassment, prejudice, and confusion of issues.* *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679; *State v. Green* (1993), 66 Ohio St.3d 141, 147. The limitation of cross-examination lies within

the sound discretion of the trial court, viewed in relation to the particular facts of the case. *State v. Acre* (1983), 6 Ohio St.3d 140, 145 (such a decision will not be disturbed in the absence of a clear showing of an abuse of discretion).

¶{42} As the state urges, the trial court placed a reasonable limit on cross-examination. The state points out that the allegations of intimidation were in a police report that had not yet been investigated and they are appellant's interpretation of an event occurring between a defense witness who lived with appellant and her concerned aunt and cousin. As the trial court noted, a defendant could file a report mid-trial to generate new, uninvestigated evidence to use to impeach a witness. Considering the particular concerns in this case and incorporating the review conducted supra, we conclude that the trial court did not clearly abuse its discretion in granting the state's motion to exclude this evidence from trial, especially where Bridget did not change her statement and maintained her stance in favor of appellant's defense. For all of these reasons, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

¶{43} Appellant's third assignment of error states:

¶{44} "THE TRIAL COURT'S CURATIVE INSTRUCTIONS WERE INSUFFICIENT TO CURE THE REPEATED, IMPROPER ALLEGATIONS THAT MR. WRIGHT ENGAGED IN OTHER BAD ACTS, INCLUDING, MAKING THREATS AGAINST CERTAIN WITNESSES AND ENGAGING IN OTHER CRIMINAL CONTACT."

¶{45} Appellant complains that witnesses were permitted to provide hearsay testimony and testimony on other bad acts in violation of Evid.R. 404(B). He urges that the court's instructions did not cure the prejudicial effect on his defense.

¶{46} According to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court and an evidentiary decision, such as one regarding other acts evidence, will not be reversed absent an abuse of discretion that

causes material prejudice.  *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, ¶62.  An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

**¶{47}**  First, Shawn testified that appellant ordered him to assist in the burglary, disclosing that he feared appellant and that appellant had told him that he would kill him if he ever revealed any acts that Shawn had ever witnessed.  This is not hearsay as it was a statement of the opposing party offered against that party.  Evid.R. 801(D)(2).  In fact, it was an inculpatory statement by the defendant made contemporaneously with the commission of the offense.  Thus, it was not "other acts" evidence.  Rather, Shawn could testify that appellant threatened to kill him as it is part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment.  *State v. Curry* (1975), 43 Ohio St.2d 66, 73 (scheme, plan, or system evidence in acts leading up to offense).  The statement was part of the background of carrying out the offense.  See *State v. Gonzalez*, 7th Dist. No. 06MA58, 2008-Ohio-2749, ¶109 (evidence of the defendant threatening a witness is relevant as it links him to the offense for purposes of identity).  In any event, no objection was entered to that portion of Shawn's testimony.

**¶{48}**  Next, when asked why he took this threat seriously, Shawn responded that appellant had "been in trouble his whole life, in and out of prison."  (Tr. 216-217).  Pursuant to Evid.R. 404(A), evidence of a defendant's character or a trait of character offered by the state is not admissible for the purpose of proving action in conformity therewith on a particular occasion (unless offered in rebuttal of the defendant's evidence of his character).  Thus, the defense objected to this answer and moved to strike it.  The court sustained the objection, and ordered the jury to put it out of their mind and disregard the last comment.  (Tr. 217).  We presume that the jury followed the court's curative instruction.  See *State v. Loza* (1994), 71 Ohio St.3d 61, 75; *State v. Young*, 7th Dist. No. 09MA100, 2011-Ohio-2646, ¶49.

**¶{49}**  Appellant next complains that Bridget testified that Shawn told her that appellant would kill him if he told anyone about the burglary.  Appellant originally objected to this.  (Tr. 260).  The state then pointed out that Shawn had already testified

to this statement made directly by the defendant. Thus, it was only coming in to show how Shawn came to the decision to confess and why the witness involved her mother. At that point, defense counsel stated that the court could give a curative instruction to tell that jury that the statement was not to prove the truth but would only be used to show a timeline. (Tr. 261). The court then overruled the objection and instructed the jury that Shawn already testified, that they should consider the strength of Shawn's testimony on its own without considering that the present witness was repeating what Shawn told her. The court explained that the testimony was being presented only to lay a groundwork for what actions other people took after their conversation with Shawn. (Tr. 262). The witness then continued telling the story of what Shawn told her without further objection. The court reiterated its cautionary instruction. Similarly, Penny Wilson related the story she heard as background for why she asked Shawn to confess. Once again, the court gave a limiting instruction, pointing out that the testimony was only provided for background and not to prove the truth of Shawn's testimony. (Tr. 270-271).

¶{50} The testimony protested here was hearsay if offered to prove the truth of the matter asserted. See Evid.R. 801(C). Yet, Shawn had already testified to this, and his testimony was not hearsay. Although the defense objected at first, counsel then seemed to acknowledge that the evidence could be presented as long as the jury was informed that it was only Shawn's testimony about the burglary that could be evaluated for determining the truth of the burglary allegations. The trial court provided a cautionary instruction that such testimony was not to be considered as the truth but was only being permitted to show why the cousin involved her mother and why the aunt brought Shawn to the police station.

¶{51} In conclusion of this topic, we presume that the jury followed the court's curative instruction. See *Loza*, 71 Ohio St.3d at 75; *Young*, 7th Dist. No. 09MA100 at ¶49. Moreover, the defense did not enter further objections. Finally, because Shawn already testified to his version of the night's events, a partial reiteration of what Shawn told his cousin and aunt was not prejudicial.

¶{52} On another topic, appellant notes that on cross-examination, the defense tried to discredit Bridget for not making an official statement right away. At one point,

she stated that appellant had threatened her. As this was not responsive to the particular question asked, the court sustained the defense's objection. (Tr. 274). A discussion was had about whether the state could delve into the matter on redirect, and the defense seemed to agree that she could be asked why she did not file a report immediately. (Tr. 275). The witness then testified that appellant threatened her and she was afraid. (Tr. 277). This is not hearsay. See Evid.R. 801(D)(2). Moreover, it was a response to a door opened on cross-examination.

¶{53} Finally, appellant takes issue with two witnesses who disclosed that appellant had been accused of stealing gas. Penny mentioned that she went over to see Shawn as she knew appellant would not be home because he had to go to court for stealing gas. The court sustained the objection and told the jury that her statement was not pertinent and that the jury must disregard the answer. (Tr. 281-283). Later, in testifying about how he verified some of Shawn's statements after Shawn confessed, a detective mentioned, "there was an arrest in Steubenville for theft of gasoline". (Tr. 321). After a sustained objection, the court instructed the jury that they must disregard the testimony concerning that matter.

¶{54} Initially, we note that Shawn had already testified without objection that appellant's truck had been impounded in Steubenville in providing background for why they had to borrow a vehicle for the burglary. (Tr. 214). Additionally, evidence of a police report concerning the impoundment of appellant's truck hours before the burglary also came in during the testimony of appellant's girlfriend, a defense witness. (Tr. 353). Thus, it was not prejudicial when mentioned and struck later. Lastly, we presume the jury followed the court's instructions to disregard the testimony. See *Loza*, 71 Ohio St.3d at 75; *Young*, 7th Dist. No. 09MA100 at ¶49. As such, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER FOUR

¶{55} Appellant's fourth assignment of error contends:

¶{56} "MR. WRIGHT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

¶{57} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*

(1997), 78 Ohio St.3d 380, 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.

¶{58} A reversal on weight of the evidence is ordered only in exceptional circumstances. Id. In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

¶{59} In conducting our review, we proceed under the theory that when there are two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore* (1999), 131 Ohio App.3d 197, 201. Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it. See *Seasons Coal Co. v. Cleveland* (1994), 10 Ohio St.3d 77, 80; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

¶{60} Contrary to a suggestion in appellant's brief, we do not consider Brandon's post-trial confession under this assignment of error. The effect of the confession was considered in the first assignment of error; this assignment of error deals with reviewing the weight of the evidence to support the jury verdict. As the jury verdict had nothing to do with Brandon's post-trial confession, it is irrelevant to this assignment.

¶{61} Here, the jury had before it the testimony of Shawn Ellenbaugh, a nineteen-year-old who voluntarily turned himself into the police despite the fact that he was not viewed as a suspect. He incriminated himself for burglary in testifying against his mother's live-in boyfriend (who is also said to be his mother's cousin). He

described the roles that he and appellant played in the night's events. He stated that he waited at the end of his uncle's drive while appellant borrowed the car from him.

¶{62} The jury believed this testimony over the testimony of Shawn's mother, who stated that she was the one who waited around the corner of the house while appellant borrowed the car from her brother. She also stated that she and appellant were together from when they borrowed the car until they went to bed at 1:00 a.m. and that he never left the bed. (Tr. 337-33-341). The jury apparently disbelieved this testimony.

¶{63} Shawn stated that he and appellant walked to the neighbor's house and burglarized it, then borrowed the car. A cousin testified that she saw both appellant and Shawn return to their house in the car in the morning. The jury believed this testimony over the testimony of Brandon, who stated that Shawn left the house in the car that night after his mother and appellant brought it home and that Shawn returned alone in the car the next morning.

¶{64} As appellant points outs, Shawn had two prior juvenile felony adjudications, including breaking and entering and making a bomb threat, and he admitted that he did not like appellant or his mother. (Tr. 212-213, 247-248). The jury heard this. Still, they found his testimony believable. The jury saw him testify live; they witnessed his voice inflection, demeanor, eye movements, and gestures. Thus, they were in the best position to judge his credibility on whether appellant assisted him (or directed him) in burglarizing the neighbor's house. As Shawn's testimony was not incredible or unrealistic, there is no reason to find that the verdict was contrary to the manifest weight of the evidence.

¶{65} Moreover, under all versions, it was appellant who at midnight borrowed the vehicle that was used in transporting the items away from the burglary. (Tr. 165). Appellant had promised to return the vehicle in two hours. However, at 7:30 a.m., it was parked in appellant's driveway with a broken trunk latch and a scratched dashboard, both the result of forcing the oversized television into the car. (Tr. 169). In reading the entire transcript and weighing all the evidence, we cannot sit as the thirteenth juror and say that the jury clearly lost its way and created such a manifest

miscarriage of justice in finding appellant guilty of burglary. This assignment of error is overruled.

¶{66} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, P.J., concurs.
DeGenaro, J., concurs.