[Cite as *State v. Bentley*, 2018-Ohio-4478.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-A-0088** |
| DWAYNE BENTLEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 02 CR 294.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Gregory T. Stralka*, 6509 Brecksville Road, P.O. Box 31776, Cleveland, OH 44131 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Dwayne Bentley, appeals from a judgment of the Ashtabula County Court of Common Pleas overruling his motion for new trial. The judgment is affirmed.

{¶2} In October 2002, appellant was indicted on twelve counts of rape, violations of R.C. 2907.02. The victim in each count was appellant's daughter, C.B. C.B. testified against appellant; she was twelve years old at the time of trial. In 2005, appellant was

convicted on eight counts of rape: six counts that occurred between January 1, 1994, and January 1, 1995, when C.B. was two or three years old; and two counts that occurred in October 2001 when C.B. was nine years old. The trial court imposed four consecutive life sentences and found appellant to be a sexually-oriented offender. *See State v. Bentley*, 11th Dist. Ashtabula No. 2005-A-0026, 2006-Ohio-2503.

{¶3} Appellant filed a pro se "Motion for Leave to File New Trial Motion" on May 15, 2015. Attached to his motion was an affidavit of C.B. that had been notarized one year earlier on April 9, 2014. In her affidavit, C.B. stated she "lied on the stand during my father['s] trial that he raped me," "my father never raped me," and that three caseworkers from Ashtabula County Children Services had told her "to state my father Dwayne Bentley raped me and if I did not state my father raped me I will never see my mother or sister again." Also attached to appellant's motion was an August 24, 2010 letter and a March 26, 2011 notarized letter from C.B., both indicating she had lied on the stand because Children Services threatened she would never see her sister or mother again; a March 26, 2011 notarized letter from B.B., C.B.'s younger sister, stating she was present in the room when Children Services threatened C.B. to testify; and a July 1, 2011 notarized letter from J.B., an adult relative, indicating both daughters had told her the same narrative that was in their letters to appellant.

{¶4} The trial court overruled appellant's motion for leave on May 27, 2015, without an evidentiary hearing. On appeal, this court reversed the trial court's judgment, and the matter was remanded to the trial court to grant appellant leave to file his delayed motion for new trial. *State v. Bentley*, 11th Dist. Ashtabula No. 2015-A-0032, 2016-Ohio-3290.

{¶5} Appellant filed his motion for new trial and motion for evidentiary hearing on June 24, 2016. Appellant attached the letters and affidavits that were attached to his motion for leave, as well as his own personal affidavit.

{¶6} An evidentiary hearing on the motion was held on March 6, 2017; both appellant and appellee, the state of Ohio, presented witness testimony and filed closing briefs.

{¶7} The trial court overruled appellant's motion for new trial on November 27, 2017. Appellant appealed from this judgment and raises one assignment of error for our review:

{¶8} "The trial court's denial of a new trial to the Appellant was an abuse of discretion in light of the evidence presented at the hearing."

{¶9} Appellant argues the recantation of C.B.'s testimony, which was substantiated by another witness, was sufficient for the trial court to grant appellant a new trial.

{¶10} Appellant moved for a new trial pursuant to Crim.R. 33(A)(6), which provides, in relevant part: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."

{¶11} "When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the

3

hearing of the motion for such length of time as is reasonable under all the circumstances of the case." *Id.*

{¶12} The movant has the burden to show that the new evidence: "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus; *State v. Rice*, 11th Dist. Ashtabula No. 2012-A-0062, 2014-Ohio-4285, ¶13.

{¶13} "'Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial.'" *State v. Pirman*, 94 Ohio App.3d 203, 209 (11th Dist.1994), quoting *State v. Curnutt*, 84 Ohio App. 101, 101 (1st Dist.1948). "'The determination of such matters rests in the sound discretion of the trial court, whose action will not be set aside except for clear and manifest abuse.'" *Id.*, quoting *Curnutt*, *supra*, at 101.

{¶14} "'[T]he trial court must determine which of the contradictory testimonies of the recanting witness is credible and true and would the recanted testimony have materially affected the outcome of the trial.'" *Id.*, quoting *State v. Betz*, 11th Dist. Trumbull No. 3906, 1990 WL 20057, *2 (Mar. 2, 1990), citing *Toledo v. Easterling*, 26 Ohio App.3d 59 (6th Dist.1985), paragraph three of the syllabus. "Some relevant considerations in weighing the competing versions of testimony are: whether the judge reviewing the new trial motion also presided over the trial; whether the witness is a relative of the defendant or otherwise interested in his success; and whether the new testimony contradicts

4

evidence proffered by the defense at trial." *State v. Wright*, 7th Dist. Harrison No. 11 HA 2, 2011-Ohio-5761, ¶19 (citation omitted). "Furthermore, newly discovered evidence which purportedly recants trial testimony is 'looked upon with the utmost suspicion and must be viewed with strict scrutiny.'" *State v. Haynes*, 11th Dist. Ashtabula No. 2012-A-0032, 2013-Ohio-2401, ¶70, quoting *State v. Bradley*, 101 Ohio App.3d 752, 758-759 (8th Dist.1995).

{¶15} C.B. was 9 years old when she accused appellant of sexually abusing her and was 12 years old when she testified against appellant at trial. At the time of the hearing on appellant's motion for new trial, C.B. was 25 years old.

{¶16} At the hearing, C.B. testified that on the day she made the allegations against appellant, she was playing video games before school and appellant repeatedly yelled at her to put on her shoes. C.B. did not listen, and she missed the school bus. She testified that appellant grabbed her and left marks on her back, but that he did not punch her as she had originally testified. C.B. testified that when she showed the marks to her mother, her mother told her to tell the school that she was abused and maybe they would "take" her. C.B. testified she showed the marks to the school nurse because she was sad, angry, and felt neglected by her parents, who fought a lot. C.B. remembered telling the principal and someone from Children Services that she had been sexually abused because she wanted to "get away," "run away from everything," and she knew they would take her away if she said that. C.B. testified she subsequently told a number of people about being sexually abused by appellant, but that she was taking medication at the time that made her feel like a "zombie." When asked, on cross-examination, about the details of the sexual abuse, to which she had previously testified and talked about

5

with others, C.B. stated she did not remember making those statements because she was later put on medication. She also stated she learned of those details from witnessing "sex parties" her parents had at the house.

{¶17} C.B. testified that she began writing letters to appellant after she turned 18 years old and left foster care in 2010. She read one letter into the record, in which C.B. told appellant she had lied on the stand because she was threatened by Children Services that she would never see her mother and sister again. C.B. also read two affidavits into the record. One affidavit stated appellant had never touched her and she had been threatened she would never see her mother and sister again if she did not testify that appellant raped her. The second affidavit stated she had lied at appellant's trial and named two of the three Children Services caseworkers C.B. alleged had threatened her.

{¶18} C.B. testified her trial testimony was false and that she lied because she was afraid she would never see her mother and sister again. She was also afraid she would be in trouble if she told the truth at the trial. On cross-examination, C.B. stated she never told Children Services that her allegations were false or that she was not going to testify that appellant had raped her. C.B. further testified she did not tell anyone she had lied at trial until after she was released from foster care. C.B. stated she contacted an attorney for advice on obtaining a new trial for appellant, but did not retain him.

{¶19} C.B. further testified she told Cynthia Day, a caseworker with Children Services, that appellant had not raped her. Ms. Day testified at the hearing, however, that C.B. was very open about being sexually abused by appellant and that C.B. never stated she lied about the allegations or that she was pressured to make the allegations. The first encounters between C.B. and Ms. Day were in 2008, approximately once a

month for a couple years, when Ms. Day was a case aide. Ms. Day later became a caseworker and was reacquainted with C.B. in 2016 for a situation involving C.B.'s own children. Ms. Day testified that, at that time, C.B. indicated she did not want appellant to die in prison and she was communicating with appellant in writing. Ms. Day further testified that C.B. never said she had lied at appellant's trial, and C.B. told her appellant had molested her for as long as she could remember. Ms. Day kept notes regarding this conversation with C.B., and a portion of those notes was admitted into evidence.

{¶20} C.B. testified that Detective Bryan Rose contacted her concerning her recantation, but she refused to meet with him because she did not like constantly talking about it and only chose to talk to certain people she felt could help her. Detective Rose testified at the hearing that he made multiple attempts to meet with C.B., but he was ultimately told by C.B.'s sister that they both refused to meet with him.

{¶21} B.B., C.B.'s younger sister, who was incarcerated at the time of the hearing, testified that she was seven or eight years old when they were taken into custody by Children Services. B.B. testified C.B. told her, after the trial was concluded, that appellant did not rape her. B.B. further testified that she had overheard one of the caseworkers tell C.B. to say appellant raped her or she would never see B.B. or their mother again. B.B. read her affidavit into the record, dated March 26, 2011, which stated she witnessed Children Services threatening C.B. to testify that appellant raped her. B.B. testified she never told anyone, prior to her affidavit, that she witnessed Children Services threaten C.B.

{¶22} Appellant's cousin, M.B., testified that he grew up with appellant, who is like a brother to him. He testified that his two older daughters used to stay at appellant's

7

home with their cousins, C.B. and B.B.; he stated nothing ever occurred that would cause him to suspect appellant of sexual abuse. M.B reconnected with C.B. and B.B. after they were released from foster care. M.B. testified he asked C.B. if her allegations were true, and she told him they were not. M.B. stated C.B. indicated she made the allegations because she was angry with appellant, and she lied at trial because she had been threatened. M.B.'s girlfriend, the mother of M.B.'s four daughters, testified to the same effect. She testified they had lived with appellant's family on two occasions and never witnessed any abuse. Both of their affidavits were entered as exhibits; neither one had any direct knowledge of what precipitated the charges against appellant.

{¶23} The state also presented the testimony of Holly Ogden, one of the caseworkers C.B. accused of threatening her. At the time Ms. Ogden initially interviewed C.B. and B.B., they were nine and eight years old, respectively. She testified that others were present during the initial interview: the school nurse, the principal, Deputy Ted Barger, Jr., and Lee Steinbrink, the intake caseworker. Ms. Ogden saw a bruise on C.B.'s back, consistent with a fist print, and a cut on her leg; the injuries were photographed. Ms. Ogden stated both children indicated they had been physically abused, and C.B. disclosed that she had been sexually abused. Ms. Ogden also testified to some of the details of the sexual contact offered by C.B. during this interview.

{¶24} Ms. Ogden testified that C.B.'s allegations of actual sexual conduct or penetration were not made during the initial interview, only of sexual contact; the more serious allegations were made later while C.B. was in the custody of Children Services. Ms. Ogden stated she never threatened to keep C.B. away from her mother and sister if she refused to testify that appellant had raped her.

{¶25} Ms. Ogden further testified that C.B. was removed from a foster home for acting out sexually, behavior that was attributed to the sexual abuse. C.B. was treated and ultimately hospitalized for the behaviors she was exhibiting and was prescribed mood stabilizers.

{¶26} Deputy Ted Barger, Jr., testified that he was present during the interview with Children Services and that no one threatened the children in his presence. Deputy Barger investigated the report of marks on C.B.'s back, and a mark consistent with having been made by a fist was discovered. C.B. never indicated to Deputy Barger that her allegations against appellant were untrue.

{¶27} Also admitted into evidence were affidavits of the school nurse and the principal, as well as internal emails from the Ohio Public Defender's Office, which indicate C.B. attempted to contact them in 2013 regarding recanting her trial testimony.

{¶28} In addition, psychological assessments were submitted as exhibits at the hearing, which demonstrate C.B.'s state of mind immediately after she accused appellant of rape and was removed from the home. These exhibits were not admitted at appellant's trial. In its entry, the trial court stated the reports were considered for purposes of the motion for new trial in order to weigh the credibility of C.B.'s recanted trial testimony against the version of events to which she testified at the hearing. The trial court indicated that the reports reinforce the conclusion that C.B.'s trial testimony is more credible and reliable than her current testimony, but that the same conclusion could be reached without the reports, in light of the other evidence and testimony presented.

{¶29} The trial court also found the allegations against the caseworkers were not credible, in part because C.B. refused to meet with the detective assigned to investigate

9

the "new evidence" that was offered in support of her father's motion for new trial and because Ms. Day credibly testified that C.B. told her as recently as 2016 that her father had molested her for as long as she could remember. Additionally, the trial court found that one of the letters written by C.B. to appellant was written in such a way that indicates earlier letters were written and exchanged, but there was no inquiry made at the hearing as to how many were exchanged nor who initially broached the topic of C.B.'s allegedly false trial testimony.

{¶30} Upon review, there is no basis upon which we can conclude the trial court abused its discretion in finding C.B.'s trial testimony was more credible than her subsequent recantation. The trial court acknowledged that, if C.B.'s recantation was believable, it would likely change the result if a new trial is granted; thus, the trial court undertook a thorough examination of C.B.'s credibility. Although a prior judge presided over appellants' trial, the current judge reviewed the transcripts of C.B.'s trial testimony and of the other trial witnesses, which included a psychologist and psychiatrist that treated C.B. immediately after she was removed from her home. The trial court also relied on the evidence presented at trial, the psychological assessments presented at the hearing, and the testimony of C.B. and other witnesses at the hearing. The trial court concluded it was not reasonable to believe C.B.'s recantation, in light of the other evidence and testimony presented at trial that reinforced C.B.'s trial testimony. Further, the trial court stated the jury, as the trier of fact, deserved the benefit of the doubt in weighing the credibility of each testifying witness at trial.

{¶31} The trial court did not abuse its discretion in denying appellant's motion for new trial following a full evidentiary hearing.

**{¶32}** Appellant's sole assignment of error is without merit.

**{¶33}** The judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

**{¶34}** The appellant in the present case, Dwayne Bentley, is currently serving four life sentences for raping his daughter, C.B. His convictions stand on C.B.'s testimony. C.B. has recanted her testimony and her claim to have been pressured into testifying against her father has been corroborated by a third party. In light of the seriousness of the charges and their consequences, as well as the credibility of C.B.'s recantation, I respectfully dissent and would reverse the decision of the trial court.

**{¶35}** It is appropriate to grant a motion for new trial based on the recantation of prior testimony when "there is a strong probability that the newly discovered evidence will result in a different verdict." *State v. Petro*, 148 Ohio St. 505, 508, 76 N.E.2d 370 (1947). *Compare State v. Collier*, 8th Dist. Cuyahoga No. 103857, 2016-Ohio-4951, ¶ 56 (affirming the trial court's decision to grant a motion for new trial "based upon the alleged victim in the case completely recanting her trial testimony 16 years after the trial"); *Commonwealth v. Mosteller*, 284 A.2d 786, 789 (Pa.1971) ("where as here the defendant's conviction is based completely on testimony of the child prosecutrix and the

11

truth of that testimony is open to serious question because of the testimony of a disinterested medical witness, a subsequent recantation of testimony as supported by this record necessitates a new trial"); *State v. D.T.M.*, 896 P.2d 108, 111 (Wa.App.1995) ("[w]hen a defendant has been convicted *solely* on the testimony of a now recanting witness, it is an abuse of discretion not to grant a new trial").

{¶36} In the present case, appellant's conviction rested upon C.B.'s testimony as acknowledged by the trial court. November 27, 2017 Judgment Entry at 4 ("[i]f the recantation of [C.B.] is believable, it would likely change the result if a new trial is granted"); *State v. Bentley*, 2016-Ohio-3290, 66 N.E.3d 180, ¶ 18 (11th Dist.) ("[n]o physical or medical evidence was introduced against appellant at trial"). C.B. claimed she was pressured to testify against the appellant by children services caseworkers. The record indicates multiple complaints against the appellant were made to children services, however, "[e]xcept for the charges in 1994, all other charges were marked by the agency as 'unsubstantiated' and did not result in criminal prosecution." *State v. Bentley*, 11th Dist. Ashtabula No. 2005-A-0026, 2006-Ohio-2503, ¶ 18. Finally, C.B.'s claims were corroborated by the testimony of her sister (B.B.), who witnessed the alleged coercion but who did not testify at the appellant's trial.

{¶37} While the crimes for which the appellant was convicted are heinous, that fact, alone, does not justify judicial blindness to the appellant's right to justice and fairness. In this case, the sole witness to the alleged crimes has fully recanted her testimony and her claim of coercion has been corroborated. Justice and fairness dictate that a new trial is warranted.

**{¶38}** In light of the foregoing, Bentley's motion for new trial should have been granted. Accordingly, I respectfully dissent.